STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS.

RECEIVED
ROCKINGHAM
SUPERIOR COURT
SUPERIOR COURT

2018 MAY - 1 | A 10: 45

Karen M. Weinhold, Charles L. Weinhold
and the State of New Hampshire

v.

Travelers Insurance Company, Inc.

Docket No.

**COMPLAINT**

The Plaintiffs, Karen and Charles Weinhold ("Karen" "Chuck" and, collectively, the

"Weinholds"), by their undersigned attorneys, McLane Middleton, Professional Association,

Tenn and Tenn, Professional Association, and Vincent Wenners Law Office, along with the State

of New Hampshire by and through the Attorney General of the State of New Hampshire,

complain against the defendant as follows:

**I.   PARTIES**

1.      Karen Weinhold is an individual who resides at 23 Bradstreet Road, Hampton,

New Hampshire 03842.

2.      Charles Weinhold is an individual who resides at 23 Bradstreet Road, Hampton,

New Hampshire 03842.

3.      The State of New Hampshire ("the State"), is a governmental entity with an

address of 107 N. Main Street, Concord, New Hampshire, 03301.

4.      Travelers Insurance Company, Inc.("Travelers"), is a corporate entity licensed to

do business in New Hampshire with a principal place of business located at 485 Lexington

Avenue, New York, New York 10074.

**II.   JURISDICTION AND VENUE**

5.      This is an action for declaratory judgment pursuant to RSA 491:22.

A TRUE COPY ATTEST

CLERK Maureen F. O'Neil

6.      Pursuant to RSA 507:9, venue is proper in Rockingham County since the Plaintiffs reside there.

## III.    FACTS COMMON TO ALL COUNTS[1]

7.      The Weinholds filed a lawsuit against the State, Audley and Remi Gross-Santos ("Gross-Santos") for the harms and losses they suffered on June 12, 2014, when Gross-Santos, who then was seventeen years of age, fell asleep at the wheel, drove off the road and crashed into Karen and her friend who were walking along the shoulder on the west side of Ocean Boulevard. *Karen Weinhold et al v. Audley Construction, Inc. et al.*, Rockingham County Superior Court, Docket No. 218-2014-CV-1169.

8.      The Weinholds presented evidence at trial that Karen was walking on an unprotected shoulder instead of the sidewalk running along the east side seawall because Audley, with the State's approval, had closed the protected sidewalk on the east side of the roadway and directed the public to the unprotected shoulder on the west side.

9.      Audley shut down the sidewalk as part of the reconstruction of the seawall that runs along Ocean Boulevard between approximately 12th Street and High Street—a project known more generally as the North Beach seawall repair project.

10.     The Weinholds presented evidence at trial that the State approved Audley's plan to shut down the public sidewalk and to then divert the public to the opposite side of Ocean Boulevard.

---

[1] For clarity, Plaintiffs are seeking a determination of the State's coverage on the basis of the jury verdict as it currently stands. The State of New Hampshire joins the action as a plaintiff at a time when the underlying case is still pending, and has filed post-verdict motions. The Weinholds and the State reserve all of their rights, defenses and remedies deriving from or related to the underlying case. Further, the State does not adopt any of the representations of fact pertinent to the events in that underlying action, but instead acts as plaintiff only insofar as it contends that its liability under the jury verdict should be covered by the insurance referenced herein below.


A TRUE COPY ATTEST
CLERK

11.     At trial, the Weinholds offered evidence that showed that Audley's choice to divert the public onto the unprotected west side shoulder and into harm's way instead of providing a safe path protected by concrete barriers was a negligent one.

12.     Similarly, the Weinholds offered evidence at trial that the State relied on and approved Audley's diversion of pedestrians to the west side of Ocean Boulevard.

13.     The Weinholds' claims against the State, Audley, and Remi Gross-Santos were tried beginning on January 8, 2018.

14.     The jury returned its verdict on January 19, 2018, finding each of the three defendants liable to the Weinholds and awarding Karen $8.5 million and Chuck $500,000 for their respective harms and losses.

15.     The jury determined that the proportionate fault of the three defendants for the aggregate $9 million was as follows: Remi Gross Santos-30 percent; the State-40 percent; and, Audley-30 percent.

16.     As noted, while the jury determined that each of the three defendants failed in their respective duties to the Weinholds, and thus were each responsible for the resulting injuries, it found the State slightly more at fault than the other two.

17.     Both the State and Audley are insured by Travelers for the risks associated with the choices they made with respect to the North Beach seawall construction.

18.     The State's monetary exposure in this case is limited to $475,000, or the extent of any insurance available to cover its losses.[2] RSA 541-B:14.

19.     The State required as part of its contract that Audley assume the primary obligation to pay any claims that derived from the seawall construction project by agreeing to indemnify the State for any such claims.  The State also required that Audley secure insurance

---

[2] Likewise, Audley has agreed to broad indemnification of the State for a wide array of risks.

3



A TRUE COPY ATTEST
CLERK

that would further protect the public and fortify Audley's ability to make good on its broad indemnification.

20.    In fact, in order for Audley to commence work on the seawall project, its contract with the State (approved by Governor and Council) required Audley to secure a number of different types of insurance coverage for the State's benefit, including: a commercial general liability policy ("CGL") with limits of at least $1 million; owner's protective liability insurance with limits of at least $2 million ("Owner's"); and a commercial umbrella policy with limits of at least $1 million ("Umbrella"). *See* Contract for Seawall Repair, attached hereto as Exhibit 1, at Part 10.3.

21.    The contract required that Audley include the State as an additional insured on the commercial general liability policy. *Id.*

22.    Before it could start work, Audley was obliged to submit proof it had secured the necessary coverage to the Commissioner of the Department of Resources and Economic Development subject to approved by the Attorney General. *Id.* at Part 10.1 and 10.3.

23.    The Contract furthermore required that Audley "indemnify, defend, and hold harmless the State of New Hampshire, its Agencies, and its agents and employees from and against any and all claims, liabilities, suits or penalties arising out of (or which may be claimed to arise out of) . . . ." Audley's acts or omissions "in the performance of the work covered by the [c]ontract." *Id.* at 10.3, I.

24.    Audley submitted to the Commissioner its Certificate of Liability Insurance as required, noting the State of New Hampshire as the Certificate Holder. As Certificate Holder, the State was listed as an additional insured under the Commercial General Liability insurance



A TRUE COPY ATTEST

4

CLERK

"for ongoing operations when required by written contract."  Certificate of Liability Insurance attached as Exhibit 2.

25.     The Certificate of Liability Insurance also recorded that Audley had secured an Owners Liability policy with $2 million in coverage per occurrence and $3 million in the aggregate, and $10 million in umbrella coverage.  *Id.*

26.     Audley's Certificate of Coverage specifically noted that the "North Beach Seawall repairs, Hampton, NH Certificate holder [i.e., the State of New Hampshire] is included as an additional insured under general liability coverage for ongoing operations when required by written contract." *Id.*

**COMMERCIAL GENERAL LIABILITY**

27.     Audley's CGL policy with Travelers covered the time period from January 1, 2014 to January 1, 2015.  CGL policy attached hereto as Exhibit 3.

28.     The CGL policy had aggregate limits of $2 million and $1 million per occurrence.

29.     An occurrence is defined by the CGL policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at Section V, 13.

30.     Section I,1 of the policy provides that "we will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies."  *Id.* at Section I, 1.

31.     In addition to the referenced limits of liability, the CGL policy provides that Travelers will also pay, above and beyond the limits, "[a]ll costs taxed against the insured in the" lawsuit along with any "prejudgment [or post-judgment] interest awarded against the insured . . . " *Id.* at 1 (f) and (g).

5



A TRUE COPY ATTEST

CLERK

32.     Excluded from the contract of insurance is any liability for "bodily injury" or "property damage" that is assumed by the insured by contract. *Id.* at Section I, 2 (b).  This exclusion, however, does not apply to liability for damages assumed in a contract or agreement that is an "insured contract," so long as the insured enters into such an "insured contract before the claim for "bodily injury" or "property damage" arises. *Id.* at Section I, 2 (b) (2).

33.     An "insured contract" means "that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization." *Id.* at Section V, 9 (f).

34.     As noted above, the contract between Audley and the State met the definition of an "insured contract" and the State was named as an additional insured under the CGL in the Certificate of Coverage filed with the State.

35.     In an effort to limit its exposure based on the State's status as an additional insured, Travelers points to an endorsement to the CGL policy labeled "Blanket Additional Insured (Contractor)" that provides:

> WHO IS AN INSURED—(Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but: a) Only with respect to liability for "bodily injury", "property damage" or "personal injury" and b) If, and only to the extent that, the injury or damages caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

*Id.* at Endorsement Blanket Additional Insured (Contractor).

A TRUE COPY ATTEST

CLERK ~Maureen A. O'Neil~

36.     "Your work" is defined to mean "work or operations performed by you or on your behalf."

37.     The endorsement provides that included within the definition of an "insured" under the policy is "any person or organization that you agree in a 'written contract requiring insurance' to include as an additional insured . . ." but, "only to the extent that the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of 'your work' to which the 'written contract' requiring insurance applies." And, further, "[t]he person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization." *Id.*

38.     Where there is other insurance available to the additional insured besides the CGL policy, the CGL policy provides primary coverage except when it is deemed to be excess insurance. *Id.* at Section IV, 4.

39.     The CGL policy is deemed excess when the other available insurance is "Fire, Extended Coverage, Builder's Risk, Installation Risk "or similar coverage for" the additional named insured's work.

40.     If another insurance policy besides the Travelers policy also provides primary coverage, then the Travelers policy shares the liability with any and all other primary policies on an equal basis.

**COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE**

41.     Audley also secured $10,000,000 in coverage from Travelers under the terms of a commercial excess liability policy, referred to as an umbrella policy.  Umbrella Policy attached hereto as Exhibit 4.

7



42.     The umbrella policy provides that Travelers will pay on behalf of the insured the "ultimate net loss" in excess of the applicable underlying covered limits for "bodily injury," "property damage," "personal injury" or "advertising injury."

43.     Relevant here, also insured under the terms of the umbrella policy is "[a]ny other person or organization insured under any policy of 'underlying insurance' listed in the 'Schedule of Underlying Insurance of the Declarations' of this insurance for who you have agreed in a written contract executed prior to loss to provide insurance."

44.     As noted above, Audley was required to and did secure coverage of the State as an additional insured under the Commercial General Liability policy—a policy of "underlying insurance" listed in the schedule accompanying the umbrella policy. *Id.* at Schedule.

45.     "Coverage provided will follow the same provisions, terms, definitions, exclusions, limitations and conditions of the policy(ies) of the 'underlying insurance' listed in the SCHEDULE OF UNDERLYING INSURANCE of the DECLARATION of this insurance."

**OWNERS/CONTRACTORS PROTECTIVE LIABILITY**

46.     In addition to the coverage provided by Travelers to the State as the named insured under the above-referenced CGL policy, Audley was required to, and did, secure coverage for the State under the terms of an Owners and Contractors Protective Liability Coverage Form.  Owners policy attached hereto as Exhibit 5.

47.     This Owners and Contractors policy provides coverage to the State in the event it is held liable for "bodily injury" caused by or arising out of operations performed for the State by Audley at the location specified in the Declaration.   It also provides coverage where the State's liability derives from any of Audley's acts or omissions in connection with the seawall construction.

8



48.    The location specified in the Declaration was the North Beach Seawall Repairs, North Hampton, New Hampshire.

49.    Travelers concedes that the Owners policy applies to the State's liability in this case.

IV.    **CAUSE OF ACTION**

**COUNT I - DECLARATORY JUDGMENT**

50.    Travelers, six weeks after the jury rendered its verdict, announced, for the first time after more than three years of litigation, that the sole insurance covering its liability in this case was the $2 million Owners' policy. That policy had already been reduced by $150,000 due to the prior settlement of the claim of the woman who was walking with Karen on the morning of June 12, 2014, and was also run down by Gross-Santos.

51.    Without any accompanying rationale or analysis, Travelers further stated that the CGL policy does not cover the State as an additional insured as was required by the construction contract because, Travelers argues, the State's liability is due to the State's separate and distinct breach of its duty to Karen Weinhold unrelated to Audley's actions.

52.    Simply put, Travelers position is that the CGL policy only provides coverage to an additional insured for liability that the additional insured derives vicariously as a consequence of the named insured's actionable acts and omissions.

53.    Further, Travelers contends that by disqualifying the State from coverage under the CGL policy, it has disqualified the State from coverage under the Umbrella policy.

54.    As outlined below, Travelers' efforts to defeat the jury's verdict by limiting the State's ability to pay its full share because of an absence of sufficient insurance are misdirected.

A TRUE COPY ATTEST

CLERK: Maureen F O'Neil

9

**A.     The State Is Covered As An Additional Insured Under The CGL Policy And Therefore Is Also Covered By the Umbrella Policy**

55.     Travelers tries to avoid coverage of the State under the terms of the CGL policy by, in essence, claiming that its acts and omissions had nothing to do with the jury's finding of liability against the State.

56.     In making this argument, Travelers points to the language in the endorsement to the CGL that references "Contractors" and provides that "additional insureds" to the policy are covered only to the extent "the injury or damage[s are] caused by acts or omissions of [the insured] or [its] subcontractor in the performance of '[the insured's] work' to which the 'written contract requiring insurance applies.'" Ex. 3, "Blanket Additional Insured Endorsement" §1(b).

57.     This limitation on "Contractors" specifically disqualifies putative additional insured contractors from coverage where it is their "independent acts or omissions" that give rise to the questioned liability.

58.     As a preliminary matter, the State is not a "contractor." It is the owner of the project. Thus, the language in the endorsement that applies to "contractors" does not modify the language in the main insurance contract that specifies that the policy applies to the "insured contract," which is defined as "that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Ex. 3 at Section V, 9 (f).

59.     Here, the contract between Audley and the State provides that the "State shall be named as an additional named insured" on its Commercial General Liability Insurance." Ex. 1, Part 10.3, B.



A TRUE COPY ATTEST
CLERK

10

60.     There is no limitation in the core policy language for the coverage of an additional insured other than that: (1) The additional insured be so named as required by a contract entered into by the insured in the conduct of its business; and (2) That the contract requiring the insurance be entered into before the liability that is alleged to have been covered by the policy arises.

61.     The State was therefore included as an additional insured pursuant to the core terms of the policy.

62.     In fact, the State's coverage as a named additional insured to Audley's CGL policy is reflected in the Certificate of Liability Insurance that Audley submitted to the State that specifies that the State "is included as an additional insured under general liability coverage for ongoing operations when required by written contract." Exhibit 2.

63.     Further, even were the endorsement for "Contractors" as additional insureds applicable in this case it would not limit the State's coverage under Audley's CGL.

64.     The interpretation of an insurance policy language is, as with any contract, a question of law for the Court to decide. *Tech-Built 153 v. Va. Surety Co.*, 153 N.H. 371, 373 (2006).

65.     The Court construes the language of the insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Merchants Mut. Ins. Co. v. Laighton Homes*, 153 N.H. 485, 487 (2006).

66.     Where the terms of a policy are clear and unambiguous, the Court will give the policy language its natural and ordinary meaning. *Banfield v. Allstate Ins. Co.*, 152 N.H. 491, 494 (2005).



A TRUE COPY ATTEST

CLERK

11

67.     If the language has more than one reasonable meaning, and is therefore ambiguous, then the Court will find coverage so long as one of those reasonable interpretations provides coverage. *Merchants*, 153 N.H. at 487.

68.     Assuming the State stands in the role of "contractor" subject to the limitations on a contractor's qualification as additional insured under the CGL policy, Travelers contends that the State's liability is not covered under Audley's CGL policy because, it says, the Weinholds' injuries were not ". . . caused by acts or omissions of [Audley] or [its] subcontractor in the performance of "[Audley's] work" to which the "written contract requiring insurance" applies.

69.     As a related matter, Travelers claims the State's liability is not covered by Audley's CGL policy because, it argues, the State's liability was due to the State's "independent acts or omissions."

70.     Travelers' position is one that it and other companies have advanced in other matters. The majority of those cases do not construe the language to constrain the coverage of an additional insured to their vicarious liability for the insured's acts or omissions. *See Orchard v. Phoenix Insurance Company*, 146 F. Supp. 3d 879, 887–88 (E.D. Mich. 2015), *aff'd on other grounds* Docket Nos. 16-1176, 16-1231 (6th Cir., Jan. 20, 2017) (Court agrees that had [insurance company] wished to limit coverage to cases involving vicarious liability, it could have easily drafted a more explicit restriction in its policy. As it stands, the plain language is not clearly limited to such circumstances"); *see also, First Mercury Ins. Co. v. Shawmut Woodworking and Supply, Inc.,* 2016 US App. Lexis 16152 (2d Cir., Aug. 29, 2016); *but see, Comm. Asphalt Corp. v. Travelers Indemnity Co.*, 2017 WL 4712199 (S.D. Fla., April 26, 2017).

71.     Travelers' position depends on its construction of the jury's verdict as an award based on the separate liability of each of the defendants for their separate acts or omissions.



A TRUE COPY ATTEST

CLERK: Maureen F. O'Neil

That, however, is not the nature of the underlying verdict. Rather, RSA 507:7–e, requires the jury to apportion fault amongst joint tortfeasors, not to allocate their separate liability based on an evaluation of their distinct acts and omissions. (The court must "instruct the jury to determine, or if there is no jury shall find, the amount of damages to be awarded to each claimant and against each defendant in accordance with the proportionate fault of each of the parties.")

72.    The jury makes the determination as to the "amount of damages" based on "proportionate fault" only after establishing the various defendants' liability. Indeed, the determination of fault is notwithstanding the liability of the parties which is shared between them. In fact, the law permits a defendant determined to be jointly and severally liable a credit where the plaintiff has received payment from any of the other defendants unless there is a finding of minimal fault. *Tiberghein v. B.R. Jones Roofing Co.*, 156 N.H. 110, 115 (2004).

73.    The Weinholds contend that the evidence established that the State's liability was because it endorsed (or at least failed to restrain) Audley from diverting pedestrians into harm's way instead of abiding its duty to the public by creating a protected walkway. In other words, the jury found that the Weinholds' injuries were "caused by acts or omissions of [Audley]." And, by contrast, the Weinholds' injuries cannot be said to be caused by the State's "independent acts or omissions."

74.    The Weinholds contend that their injuries were due to the State's and Audley's collective actions—actions that cannot be separated when evaluating the liability that flows causally from their breach of their duty to conduct the construction on the North Beach seawall so that the public's safety was reasonably protected. This included the duty to exercise reasonable care when establishing a detour around the construction site once construction forced the closure of the sidewalk.

A TRUE COPY ATTEST

CLERK Maureen F. Oneil

75.     In summary, the State's liability for the Weinholds' harms and losses was derivative of, and related to, Audley's acts and omissions in connection with its repair of the North Beach seawall.

76.     Audley agreed as part of its contract with the State to name it as an additional insured to its CGL policy.

77.     The CGL policy provided for Audley's agreed-to coverage of the State.

78.     Since the CGL policy is one of those policies listed on Umbrella policy's schedule of covered policies, the State's liability to the Weinholds is also covered by Audley's Umbrella policy.

79.     Because the Plaintiffs should not have been required to bring this action to establish their clearly defined rights, they are entitled to their fees and costs pursuant to both *Harkeem v. Adams*, 117 N.H. 687, 691 (1977) and RSA 491:22-b.

WHEREFORE, Plaintiffs respectfully pray that the Court:

A.     Declare that the State's liability as determined by the jury's verdict is covered by the CGL policy;

B.     Declare that the State's liability as determined by the jury's verdict is covered by the Umbrella policy;

C.     Declare that the State's liability as determined by the jury's verdict is covered by the Owners policy;

D.     Award Plaintiffs their attorneys' fees and costs for having to pursue this declaratory judgment action; and,

E.     Grant such other relief as it deems just.

14



A TRUE COPY ATTEST

CLERK

Respectfully submitted,

KAREN M. WEINHOLD AND CHARLES L.
WEINHOLD

By Their Attorneys,

McLANE MIDDLETON
 PROFESSIONAL ASSOCIATION

Dated: May 1, 2018

By: *Ashley Campbell* 264860
for + w/ permission
    Scott H. Harris, (NH Bar No. 6840)
    scott.harris@mclane.com
    900 Elm Street, P.O. Box 326
    Manchester, New Hampshire 03105-0326
    Telephone: 603.625.6464
    Email: scott.harris@McLane.com

By: *Ashley Campbell* 264860
for + w/ permsn
    Mary Elizabeth Tenn (NH Bar No.: 11043)
    Tenn and Tenn, P.A.
    16 High Street, Suite Three
    Manchester, NH 03101
    Telephone: (603) 624-3700
    Email: marytenn@tennandtenn.com

By: *Ashley Campbell* 264860
for + w/ permsn
    Vincent A. Wenners, Jr. (NH Bar No.: 1547)
    12 Bay Street
    Manchester, NH 03104-3004
    Telephone: (603) 606-5750
    Email: vwenners@wennerslaw.com

15

A TRUE COPY ATTEST

CLERK *Maureen R. O'Neil*

Dated: May 1, 2018

THE STATE OF NEW HAMPSHIRE

By its attorney,

GORDON J. MACDONALD
ATTORNEY GENERAL

Dianne Martin, (NH Bar No. 15350)
Senior Assistant Attorney General
Transportation and Construction Bureau
33 Capitol Street
Concord, NH  03301-6397
Phone: (603) 271-3675
Email: dianne.martin@doj.nh.gov

A TRUE COPY ATTEST

CLERK Maureen F. O'Neil

16