UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Karen M. Weinhold, et al.**

   v.                                            Case No. 18-cv-383-PB
                                                    Opinion No. 2018 DNH 246

**The Phoenix Insurance Company, et al.**


**MEMORANDUM AND ORDER**

The Weinholds and the State of New Hampshire ("State") jointly filed this insurance declaratory judgment case in New Hampshire Superior Court pursuant to Section 491:22 of the New Hampshire Revised Statutes. The defendants removed the action to federal court, invoking this court's jurisdiction pursuant to 28 U.S.C. § 1332 and § 1441(a) on the basis that there is complete diversity of citizenship between the parties and the amount of controversy exceeds $75,000. The issue before me is whether there is diversity jurisdiction over the case given that the State is a party to the action.

## I. BACKGROUND[1]

The Weinholds obtained a jury verdict against the State and two other defendants in the underlying state tort action. The State's share of the verdict totaled $3.6 million, exclusive of

---

[1] A more detailed summary of facts of this case appears in my order denying the defendants' motion to dismiss the action on ripeness grounds. See 2018 DNH 206.

interest.  Its liability, however, is subject to a statutory cap that limits the State's tort liability to the greater of $475,000 or the amount of available insurance coverage.  See N.H. Rev. Stat. Ann. § 541-B:14, I.  The State maintains that its share of the verdict is covered in full under three policies that its contractor, Audley Construction, Inc., obtained from Travelers for the benefit of the State.

The State's contract with Audley required Audley to secure owner's protective liability coverage for the benefit of the State, a commercial general liability policy that names the State as an additional insured, and a commercial umbrella policy.  Audley procured three different policies from Travelers: an owner's protective liability policy with $2 million in coverage per occurrence and $3 million in aggregate ("Owner's Policy"), a commercial general liability policy with $1 million in coverage per occurrence and $2 million in aggregate ("CGL Policy"), and a commercial excess liability policy with $10 million in coverage ("Umbrella Policy").

After the jury verdict in the underlying action, Travelers agreed that the State is covered under the Owner's Policy, which has $1.85 million in coverage remaining.[2]  Travelers, however,

---

[2] Travelers previously paid $150,000 from that policy to settle claims against the State brought by another individual.

2

took the position that the CGL Policy and the Umbrella Policy do not cover the State's liability.

The Weinholds and the State jointly sued Travelers in New Hampshire Superior Court, seeking a declaratory judgment that the State is covered as an additional insured under the CGL Policy and the Umbrella Policy. Travelers removed the case to federal court based on diversity of citizenship, alleging that the State and the Weinholds are citizens of New Hampshire and that the Travelers entities sued are citizens of Connecticut. See Doc. No. 2.

I subsequently raised the question whether removal was improper because it appeared that the State's presence as a real party in interest destroyed complete diversity of citizenship. See Doc. No. 26. During a telephone conference held on October 9, 2018, the Weinholds and Travelers argued that the State is a nominal party whose presence can be disregarded for the purpose of diversity jurisdiction. The State disagreed and argued that it is a real party to the action. I directed the parties to file briefs presenting their respective positions on this issue.

## II. STANDARD OF REVIEW

As courts of limited jurisdiction, federal courts have a duty to inquire sua sponte into the existence of their own subject-matter jurisdiction. McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). When jurisdiction is questioned, "the party

3

invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (internal quotation marks omitted). Thus, if a plaintiff sues in federal court, the burden to establish jurisdiction is on the plaintiff.  See id.  When the plaintiff instead files suit in state court and the defendant removes the action to federal court, the onus shifts to the defendant to demonstrate that federal jurisdiction exists. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).  If federal jurisdiction is challenged after removal is accomplished, however, the burden is assigned to the party asserting jurisdiction at that time.  See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006); Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 289 (1st Cir. 2013).

    When Travelers removed this case to federal court, neither the State nor the Weinholds challenged the propriety of removal. Once I inquired into the existence of complete diversity of citizenship, the State challenged subject-matter jurisdiction, and the Weinholds and Travelers asserted that it exists. Accordingly, it is incumbent on the Weinholds and Travelers to demonstrate that the court has jurisdiction over the case.

    Because the relevant facts are undisputed, the existence of subject-matter jurisdiction is a question of law.  See Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003)

## III. ANALYSIS

Diversity jurisdiction requires complete diversity of citizenship between all plaintiffs on one side and all defendants on the other side. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). A state is not a citizen of a state for jurisdictional purposes; it is instead considered a stateless entity. Moor v. Alameda Cty., 411 U.S. 693, 717 (1973); Petroleum Expl. v. Pub. Serv. Comm'n of Ky., 304 U.S. 209, 217 (1938); U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 499 (1st Cir. 2000). As a result, when it is a real party in interest, a "[s]tate's presence as a party will destroy complete diversity." Miss. ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 174 (2014). A state's presence as a real party to the controversy spoils diversity jurisdiction even if there are otherwise diverse parties on the same side of the lawsuit as the State. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (presence of "stateless" party destroyed complete diversity even though remaining parties were completely diverse); D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 126 (1st Cir. 2011) (no diversity jurisdiction if any member of plaintiff LLC was "a stateless person, or an entity treated like a stateless person"; noting by analogy that "states are not 'citizens' for purposes of the diversity statute"); Ninigret Dev. Corp. v. Narragansett Indian

Wetuomuck Hous. Auth., 207 F.3d 21, 26-27 (1st Cir. 2000) ("notwithstanding the joinder of other diverse parties, the presence of an Indian tribe destroys complete diversity" given that "a tribe is analogous to a stateless person").

If a state is a nominal party with no real interest in the litigation, its presence must be disregarded for jurisdictional purposes. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."). "In contrast to a real party in interest, a formal or nominal party is one who, in a genuine legal sense, has neither an interest in the result of the suit, nor an actual interest in or control over the subject matter of the litigation." 15 Moore's Federal Practice § 102.15 at 102-36 (3d. ed. 2018).

I conclude that the State is a real party to this controversy, and thus its presence defeats diversity jurisdiction. Two factors, taken together, compel this conclusion.

First, the State is an insured suing its insurer to determine the extent of coverage for the State's tort liability in the underlying action. An insured ordinarily is not considered a nominal party in an action against its insurer regarding its own coverage. See, e.g., Geismann v. Am. Econ.

Ins. Co., No. 4:11-CV-1185-CDP, 2011 WL 4501161, at *2 (E.D. Mo. Sept. 28, 2011) ("An insured party has more than a nominal interest in the outcome of a declaratory judgment action regarding the terms of its policy.").

Second, in requiring Audley to purchase significant insurance coverage for the State's benefit, the State sought to ensure that victims of its negligence, such as the Weinholds, would be made whole. The State has a substantial and real interest in litigation that will determine whether this important policy goal will be achieved. This interest is "one in the state as an artificial person," as distinguished from general governmental interests such as the welfare of its citizens or enforcement of its laws that have been deemed insufficient. See Mo., Kan., & Tex. Ry. Co. v. Hickman, 183 U.S. 53, 60 (1901); see also Am. Lung Ass'n of N.H. v. Am. Lung Ass'n, No. CIV. 02-108-B, 2002 WL 1728255, at *2 (D.N.H. July 25, 2002) (citing Hickman for the proposition that the state was a nominal party where it had no "interest in the action apart from its general interest in protecting its citizens").

Travelers and the Weinholds maintain that the State is nonetheless a nominal party because it has no financial stake in the outcome of the dispute. Section 541-B:14 caps the State's liability at the greater of $475,000 or the amount of available insurance coverage. Because the State has $1.85 million in

7

available coverage under the Owner's Policy, win or lose, it will not be liable to pay the Weinholds any monies from the public treasury.

But the State is not necessarily a nominal party simply because it lacks a pecuniary interest in the outcome of the litigation. The Fifth Circuit's decision in Louisiana v. Union Oil Company of California, 458 F.3d 364 (5th Cir. 2006) is instructive on this point. There, the State of Louisiana and a local school board filed suit in state court against out-of-state oil companies for harm to "Section 16" public lands. Id. at 366. The federal government had dedicated Section 16 lands for the use of public education before Louisiana was admitted into the Union. Id. at 367. As a result, although Louisiana held the legal title to the lands, local school boards were entitled to use them for educational purposes. Id. at 366 & n.1. After the oil companies removed the case to federal court on diversity grounds, the plaintiffs sought remand on the basis that Louisiana's presence destroyed complete diversity. Id. at 366. Despite the fact that Louisiana's public coffers could not benefit from the action, the Fifth Circuit concluded that the state was a real party to the controversy. See id. at 367. The court reasoned that Louisiana owned the lands and had a "moral obligation" to ensure that any revenues derived from them were

used for school purposes.  Id.  Accordingly, Louisiana had "more than a 'nominal' interest" in the case.  Id.

Here, the State's status as an insured whose coverage is in dispute and the fact that it sought this coverage in the interest of protecting victims of its negligence are likewise sufficient, in tandem, to make the State a real party in interest.  The State's presence in this action therefore destroys complete diversity of citizenship.

## IV.  CONCLUSION

For the foregoing reasons, there is no federal subject-matter jurisdiction over this case.  The case is remanded to New Hampshire Superior Court.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

December 13, 2018

cc:  John P. Graceffa, Esq.
     Brian A. Suslak, Esq.
     Scott H. Harris, Esq.
     Ashley B. Campbell, Esq.
     Mary Elizabeth Tenn, Esq.
     Vincent A. Wenners, Jr., Esq.
     Dianne H. Martin, Esq.
     Lawrence M. Slotnick, Esq.

9